**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **In Re:** | **Case No.: 26-03166 (ESL13)** |
| **AMILCAR NORAT COLLAZO** | |
| | **Chapter 13** |
| **Debtor(s)** | |

**OPPOSITION TO DEBTOR'S MOTION TO CONTINUE THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(c)(3)(B)**

TO THE HONORABLE COURT:

COME NOW FRANCISCO M. NORAT GONZÁLEZ and SANDRA L. GONZÁLEZ COLÓN, through undersigned counsel, and respectfully **oppose** Debtor's **Motion to Continue the Automatic Stay** at Docket No. 5, and state as follows:

## I. INTRODUCTION

1. Debtor asks this Court for the same extraordinary protection that he received in his immediately preceding Chapter 13 case, Case No. 25-03828-ESL, which was dismissed less than four months before the filing of this case.

2. The prior case did not fail because of an isolated emergency, a temporary interruption of income, or an unforeseeable event beyond Debtor's control. It failed because Debtor did not commence making the payments required under his proposed Chapter 13 plan, accumulated six monthly defaults, tendered payments that were twice returned for insufficient funds, and, according to the Chapter 13 Trustee, **"has not made plan payments since the commencement of the case."**

3. The Chapter 13 Trustee sought dismissal on four separate occasions or otherwise repeatedly placed Debtor's noncompliance before this Court. The Trustee initially reported Debtor's failure to attend the meeting of creditors required under 11 U.S.C. § 341 and Bankruptcy Rule 4002. Thereafter, the Trustee reported progressively increasing plan-payment defaults of $3,000.00, $5,000.00, and $6,000.00.

1

4. On March 23, 2026, after Debtor represented that he had cured the plan arrears by paying $6,000.00, the Trustee informed the Court that the alleged payment had been returned for insufficient funds; that it was the second payment tendered by Debtor that had been dishonored; and that Debtor had not made plan payments since the commencement of the case.

5. Two days later, on March 25, 2026, this Court granted the Trustee's request and dismissed Debtor's prior Chapter 13 case.

6. Debtor filed the present case on July 9, 2026. Yet the plan filed in this second case is, according to the documents presently available to the Objecting Creditors, **exactly identical** to **the plan Debtor failed to perform in the dismissed case**. It again begins with monthly payments of $1,000.00, followed by progressively increasing payments, and again depends upon an alleged future increase in income and an anticipated $130,500.00 lump-sum payment from unspecified "expected new business projects."

7. Debtor has not identified any completed business project, binding contract, committed financing, verified increase in income, new employment, liquidation event, or other material change capable of transforming the same unsuccessful plan into a feasible reorganization.

8. The filing also occurred **only six days before a scheduled July 15, 2026, hearing** in the Puerto Rico Court of First Instance, in proceedings concerning Debtor's longstanding child-support obligations and **an outstanding civil-contempt arrest order**.

9. Debtor's conduct after filing the second petition further undermines any assertion of good faith. In the July 15, 2026, hearing, the state court required Debtor to make an immediate $500.00 payment towards **a debt of $193,132.40 as of January 2025** and ordered him to pay the amount of $444.32 within five days through ASUME. The ASUME certification issued on July 23, 2026, continued to reflect a balance of $944.32 and listed July 3, 2026, as the date of the last payment recorded under the applicable payment plan. To the Objecting Creditors' knowledge, **Debtor did not satisfy the $444.32 within the five-day period ordered by the state court**.

10. Section 362(c)(3) was not designed to provide an automatic renewal of bankruptcy protection to a debtor who repeats the same filing, proposes the same plan, relies on the same speculative assumptions, and continues with the same pattern of noncompliance.

11. The statute requires Debtor—not the Objecting Creditors—to establish that this second filing was made in good faith as the creditors sought to be stayed. Where the statutory presumption of lack of good faith applies, Debtor must rebut that presumption by clear and convincing evidence. 11 U.S.C. § 362(c)(3)(B)–(C).

12. Debtor cannot meet that burden. The record demonstrates no substantial change in his financial or personal affairs since dismissal of the prior case and no other reason to conclude that this second case will result in a confirmed plan that Debtor will fully perform.

13. Debtor's Motion should therefore be denied, and the automatic stay should be permitted to terminate by operation of 11 U.S.C. § 362(c)(3)(A).

## II. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A. The prior Chapter 13 case

14. On or about August 26 or 27, 2025, Debtor commenced his prior Chapter 13 case, *In re Amilcar Norat Collazo*, Case No. 25-03828-ESL.

15. The prior petition was filed while state-court proceedings concerning Debtor's unpaid child-support obligations and **a civil-contempt arrest order were pending**.

16. The filing imposed an automatic stay and caused the Puerto Rico Court of First Instance to suspend enforcement of the outstanding arrest order while the bankruptcy case remained pending.

17. On November 19, 2025, Chapter 13 Trustee José R. Carrión filed a **Trustee's Motion to Dismiss**, reporting that Debtor had failed to attend the meeting of creditors scheduled pursuant to 11 U.S.C. § 341, in violation of Bankruptcy Rule 4002.

18. The Trustee asserted that Debtor's default constituted an unreasonable delay prejudicial to creditors and requested dismissal under 11 U.S.C. § 1307(c).

19. On December 15, 2025, the Trustee filed another **Motion to Dismiss**, reporting that Debtor was in material default under the proposed or confirmed plan and was $3,000.00 in arrears.

20. The Trustee explained that dismissal was warranted unless Debtor became current with all required plan payments because the continuing default constituted unreasonable delay prejudicial to creditors.

21. On February 23, 2026, the Trustee **again moved to dismiss**. At that time, Debtor was $5,000.00—or five monthly payments—in arrears.

22. The February 23 motion expressly stated that Debtor had "failed to commence making payments under the proposed plan" as required by 11 U.S.C. § 1326(a)(1).

23. On March 19, 2026, Debtor responded to the Trustee's motion and represented that he had made a $6,000.00 payment that cured the outstanding plan-payment arrears.

24. On March 23, 2026, the Trustee filed his **Position as to Response to Motion to Dismiss**, informing the Court that the purported $6,000.00 payment had been returned by the bank for insufficient funds.

25. The Trustee further stated:

    *"At this time, Debtor is $6,000.00 or six payments in arrears with the Trustee. In other words, **Debtor has not made plan payments since the commencement of the case.**"*

26. The Trustee also advised the Court that this was the second time that a payment tendered by Debtor had been returned for insufficient funds.

27. In light of Debtor's complete failure to fund the plan, his accumulated six-month default, and his repeated tender of dishonored payments, the Trustee **reiterated his request for dismissal**.

28. On March 25, 2026, this Court granted the Trustee's motion at Docket No. 52 and dismissed Case No. 25-03828-ESL.

## B. Debtor's conduct after dismissal of the first case

29. Once the first case was dismissed, the state court resumed proceedings concerning Debtor's child-support obligations and prior contempt.

30. On or about April 14, 2026, as later amended on May 8, 2026, **the Puerto Rico Court of First Instance found Debtor in civil contempt for repeated nonpayment of child support and issued or maintained an arrest order associated with a debt of $193,132.40 as of January 2025.**

31. That amount is the same aggregate amount Debtor lists in the present Chapter 13 plan as priority claims: $96,566.20 attributed to Francisco M. Norat González and $96,566.20 attributed to Sandra González Collazo, totaling $193,132.40.

32. Debtor's present plan therefore acknowledges the amount and priority character of the claims that form the principal subject of the state-court enforcement proceedings.

33. Between the dismissal of the prior case and the filing of the present one, **Debtor continued to accumulate current payment arrears through ASUME.**

34. Debtor made a substantial ASUME payment of approximately $6,646.32 on or about July 6, 2026, **only days before the scheduled state-court hearing and pending an arrest order for civil contempt**. That payment reduced, but did not eliminate, the current ASUME arrearage and did not affect the separately recognized $193,132.40 debt.

35. The timing of that payment demonstrates that **Debtor could obtain and deploy substantial funds when faced with imminent judicial enforcement**. It

does not establish that Debtor possesses a regular and sustainable source of income sufficient to perform a sixty-month Chapter 13 plan.

## C. The second Chapter 13 filing

36. On July 9, 2026, Debtor filed the present Chapter 13 case, Case No. 26-03166-13.

37. The plan filed in this second case is, according to the documents presently available to the Objecting Creditors, **exactly identical to the plan Debtor failed to perform in the dismissed case**.

38. **The petition was filed less than four months after dismissal of the first case and only six days before the July 15, 2026 state-court hearing pending the arrest order for civil contempt**.

39. The present Chapter 13 plan proposes the following payments:

   a. $1,000.00 per month during months 1 through 12;

   b. $1,500.00 per month during months 13 through 24;

   c. $2,000.00 per month during months 25 through 36;

   d. $2,500.00 per month during months 37 through 48;

   e. $3,000.00 per month during months 49 through 60; and

   f. A purported $130,500.00 lump-sum payment during month 36.

39. The proposed periodic payments total $120,000.00. Together with the proposed $130,500.00 lump sum, the plan projects total funding of $250,500.00.

40. The plan states, without supporting detail, that the escalating payments will arise from an "expected increase in income."

41. It further states that the $130,500.00 lump sum will arise from "expected new business projects."

42. The plan does not identify the relevant projects, their counterparties, their present status, any executed contract, the projected gross or net proceeds, the expected completion dates, or documentary evidence establishing that the anticipated $130,500.00 will probably become available.

43. The plan also provides that Debtor will make payments directly to the Trustee rather than through payroll deduction—the same type of direct-payment structure under which Debtor failed to make any effective plan payments in the prior case.

44. According to the records available to the Objecting Creditors, the payment structure and principal funding assumptions are materially the same as those included in the failed plan in the prior case.

45. Debtor has not demonstrated that his income has materially increased since March 25, 2026.

46. Debtor has not demonstrated that he has obtained new employment, new committed financing, a binding business contract, or any other reliable source from which the proposed escalating payments and $130,500.00 lump sum will be funded.

47. Debtor has not explained why the same plan that he never commenced funding in the prior case should now be considered feasible.

## D. Immediate post-petition noncompliance

48. On July 15, 2026, Debtor appeared in the Puerto Rico Court of First Instance and presented notice of the second bankruptcy filing.

49. At that hearing, the state court required Debtor to make an immediate payment of $500.00 toward the outstanding $193,132.40 as of January 2025 balance. At the date of this motion's filing the minute for the hearing has not been received.

50. The state court further ordered Debtor to pay $444.32 within five days through ASUME, due July 20, 2026.

51. An ASUME certification issued July 23, 2026, reflected a weekly support obligation of $184.62, identified July 3, 2026, as the date of the last payment registered under the payment plan, and stated a balance of $944.32.

52. The Objecting Creditors understand that **Debtor failed to satisfy the $444.32 within the time ordered**.

53. Thus, **within days of commencing the new case and while seeking the continuation of extraordinary bankruptcy protection, Debtor continued the same conduct that characterized the prior case: noncompliance with payment obligations and court orders**.

## III. APPLICABLE LEGAL STANDARD

54. Because Debtor had a prior Chapter 13 case pending and dismissed within the one-year period preceding this filing, the automatic stay in the present case is governed by 11 U.S.C. § 362(c)(3).

55. Section 362(c)(3)(A) provides that when an individual debtor had a prior Chapter 7, 11, or 13 case pending during the preceding year and that case was dismissed, the stay "shall terminate with respect to the debtor on the 30th day after the filing of the later case."

56. The First Circuit has held that § 362(c)(3)(A) terminates the automatic stay in its entirety, including as to the debtor, the debtor's property, and property of the

bankruptcy estate, unless the stay is timely extended. *Smith v. Me. Bureau of Revenue Servs.*, 910 F.3d 576, 587–91 (1st Cir. 2018).

57. Section 362(c)(3)(B) permits the Court to continue the stay after notice and a hearing completed before expiration of the thirty-day period, but only if the movant demonstrates that the later filing "is in good faith as to the creditors to be stayed."

58. The burden of proving good faith rests on Debtor as the party seeking continuation of the stay.

59. Section 362(c)(3)(C) identifies circumstances in which the later case is presumptively filed not in good faith.

60. As relevant here, the presumption arises when there has not been a substantial change in the debtor's financial or personal affairs since dismissal of the prior case, or any other reason to conclude that the later case will result in a confirmed plan that will be fully performed. 11 U.S.C. § 362(c)(3)(C)(i)(III).

61. When the presumption applies, it may be rebutted only by clear and convincing evidence. 11 U.S.C. § 362(c)(3)(C).

62. Even when the statutory presumption is found inapplicable, Debtor still bears the burden of establishing good faith under § 362(c)(3)(B), ordinarily by a preponderance of the evidence.

63. Courts determining good faith under § 362(c)(3) examine the totality of the circumstances, including:

    a. The reasons the prior case was dismissed;

    b. Debtor's conduct in the prior case;

    c. Whether the circumstances that caused the prior failure have been corrected;

    d. Whether a substantial and verifiable change in financial or personal affairs has occurred;

    e. The likelihood that the proposed plan will be confirmed and fully performed;

    f. The timing of the new filing;

    g. The nature of the creditor activity sought to be stayed;

    h. Debtor's candor and credibility;

    i. Whether the new filing merely repeats a previously unsuccessful strategy; and

    j. Whether continuation of the stay would unfairly prejudice creditors.

64. The inquiry is creditor-specific. Debtor must establish good faith "as to the creditors to be stayed," not merely assert a generalized desire to reorganize. 11 U.S.C. § 362(c)(3)(B).

### IV. THE SECOND CASE IS PRESUMED NOT TO HAVE BEEN FILED IN GOOD FAITH

**A. There has been no substantial demonstrated change since dismissal of the prior case**

65. Section 362(c)(3)(C)(i)(III) directly addresses the circumstances presented here.

66. The prior case was dismissed because Debtor never commenced making effective plan payments, accumulated six monthly defaults, and tendered two payments that were returned for insufficient funds.

67. The present case proposes materially the same payment structure and relies upon the same general sources of funding.

68. The first year again requires monthly payments of $1,000.00.

69. The later payments again depend upon an "expected increase in income."

70. The proposed plan again relies upon a $130,500.00 lump-sum payment from unspecified "expected new business projects."

71. Expectations are not changed circumstances.

72. A hoped-for increase in income is not evidence that income has increased.

73. An unidentified future business project is not a binding source of plan funding.

74. A speculative lump sum is not made feasible by repeating it in a second plan.

75. Debtor must demonstrate what materially changed between March 25, 2026—the date the first case was dismissed—and July 9, 2026—the date the second case was filed.

76. To date, the available record demonstrates no completed transaction, enforceable contract, financing commitment, new employment, verifiable income increase, or other objective development that would make the present plan more likely to succeed than the first.

77. Because Debtor has failed to demonstrate a substantial change in his financial or personal affairs, and because the record provides no other reason to conclude that this case will result in a confirmed plan that will be fully performed, the statutory presumption of lack of good faith applies.

## B. The prior case was not merely unsuccessful; Debtor never commenced meaningful performance

78. **Debtor cannot characterize the prior dismissal as the product of a minor or temporary default**.

79. The Trustee did not merely report that Debtor occasionally fell behind.

80. The Trustee stated that Debtor "has not made plan payments since the commencement of the case."

81. Debtor therefore received the benefit of the automatic stay without providing the fundamental performance required of a Chapter 13 debtor: commencement of plan payments.

82. Section 1326(a)(1) generally requires a debtor to commence making payments not later than thirty days after filing the plan or the order for relief.

83. **Debtor's failure persisted for approximately seven months**.

84. The Trustee filed repeated motions as the arrears increased from $3,000.00, to $5,000.00, and ultimately to $6,000.00.

85. That history is **fundamentally inconsistent with an assumption that Debtor will now perform the same or a materially identical plan**.

## C. The dishonored payments materially undermine Debtor's credibility

86. Debtor attempted to defeat dismissal of the prior case by representing that he had made a $6,000.00 payment sufficient to cure the arrears.

87. The Trustee later advised the Court that the payment had been returned for insufficient funds.

88. The Trustee also stated that it was the second payment from Debtor that had been returned for insufficient funds.

89. These were not merely missed payments. They were affirmative tenders of funds that were not available.

90. That history bears directly on Debtor's credibility, financial reliability, and ability to establish by clear and convincing evidence that the present filing was made in good faith.

## V. DEBTOR CANNOT REBUT THE PRESUMPTION BY CLEAR AND CONVINCING EVIDENCE

## A. The proposed plan remains speculative and facially dependent upon unverified future events

91. Debtor proposes to fund a $250,500.00 plan over sixty months.

92. More than half of that amount depends on future increases in monthly payments and a $130,500.00 lump sum.

93. The plan does not identify a presently enforceable source for the anticipated lump sum.

94. It refers only to "expected new business projects."

95. Debtor's use of the plural term "projects" provides no meaningful disclosure concerning:

       a. The identity of the projects;

       b. Their present stage of development;

       c. Debtor's contractual interest;

       d. The parties responsible for payment;

       e. The gross projected revenues;

       f. The expenses necessary to generate those revenues;

       g. The net amount that would be available to the Trustee;

       h. The probability of completion; or

       i. The expected payment date.

96. Similarly, the phrase "expected increase in income" does not establish:

       a. Debtor's current monthly income;

       b. The source of the anticipated increase;

       c. The date the increase will begin;

       d. Whether the increase is contractually guaranteed;

       e. Whether the amount is gross or net income; or

       f. Whether it will be sufficient to meet the proposed step-up payments while maintaining current living expenses and post-petition domestic support obligations.

97. The Court should not extend the automatic stay based on future events that Debtor merely hopes will occur.

## B. Refiling the same plan does not cure the first plan's failure

98. Debtor's first plan did not fail because its wording was unclear.

99. **It failed because Debtor did not fund it**.

100. Debtor now asks the Court to continue the stay based upon a materially identical plan without demonstrating that the circumstances responsible for the first failure have been corrected.

101. **A second filing does not transform an unperformed plan into a feasible one**.

102. Nor does changing the date on a plan constitute a substantial change in financial or personal affairs.

103. Continuation of the stay requires evidence that this case is materially different, not merely a second opportunity to pursue the same unsupported proposal.

## C. Debtor's immediate post-petition conduct contradicts any assertion of rehabilitation

104. A debtor seeking continuation of the stay may properly be expected to demonstrate prompt and scrupulous compliance after filing. Debtor did the opposite.

105. Six days after filing the petition, Debtor appeared before the state court in proceedings concerning his support obligations pending an arrest order for civil contempt. The state court ordered him to pay $500.00 immediately and the remaining $444.32 within five days.

106. The available ASUME certification and information concerning the state proceedings indicate that Debtor failed to satisfy the balance within the ordered period. **This immediate post-petition noncompliance is highly probative**. It demonstrates that the pattern that caused the prior bankruptcy to fail did not end when Debtor filed the second petition. It continued after the second filing.

107. **Debtor therefore cannot establish clear and convincing evidence of good faith based merely upon promises of future compliance**.

## VI. THE TIMING OF THE SECOND PETITION SUPPORTS DENIAL OF CONTINUATION

108. The Objecting Creditors recognize that filing bankruptcy in response to creditor pressure is not, standing alone, necessarily improper. Here, however, the timing is not considered in isolation.

109. Debtor filed the second petition:

   a. **Less than four months after dismissal of the first case**;

   b. **After the state court resumed enforcement proceedings**;

c. **While a civil-contempt arrest order remained outstanding**;

d. **Six days before a scheduled state-court hearing**;

e. **Without demonstrating a material change in circumstances**; and

f. **While proposing materially the same plan that he had never funded**.

110. These circumstances support the inference that **the immediate purpose of the second filing was to reimpose the automatic stay and forestall state-court enforcement**, rather than to commence a materially different and feasible reorganization.

111. The filing date is particularly significant because Debtor already received the benefit of the stay in the first case and failed to perform any effective plan payments during that protection.

112. Section 362(c)(3) was enacted precisely to prevent the automatic and repeated use of successive petitions to renew the stay without a sufficient showing of good faith.

## VII. THE NATURE OF THE CLAIMS AND THE PREJUDICE TO THE OBJECTING CREDITORS WEIGH HEAVILY AGAINST CONTINUATION

113. The relevant claims do not arise from an ordinary commercial transaction. They arise from longstanding court-ordered support obligations.

114. The present plan itself lists $193,132.40 in priority claims associated with the persons identified as Francisco M. Norat González and Sandra González Collazo.

115. The state-court record reflects repeated judicial efforts to compel compliance over many years.

116. The Objecting Creditors have already been delayed by the first bankruptcy case, during which Debtor received the protection of the stay but made no effective plan payments.

117. **Extending the stay again under a materially identical plan would subject the Objecting Creditors to further delay while rewarding the precise conduct that caused the prior case to be dismissed**.

118. The balance of prejudice therefore strongly favors allowing the stay to terminate.

## VIII. EVEN IF THE STATUTORY PRESUMPTION DID NOT APPLY, DEBTOR CANNOT PROVE GOOD FAITH BY A PREPONDERANCE OF THE EVIDENCE

119.    If the Honorable Court were to conclude that the presumption under § 362(c)(3)(C) does not apply, the Motion must still be denied because Debtor bears the affirmative burden under § 362(c)(3)(B) of proving that the second case was filed in good faith as to the creditors to be stayed.

120.    Under the totality of the circumstances, the following undisputed or documented facts weigh against good faith:

a. Debtor failed to attend the initial § 341 meeting in the prior case;

b. Debtor failed to commence making plan payments;

c. Debtor accumulated six monthly plan-payment defaults;

d. The Trustee repeatedly moved for dismissal;

e. Two payments were returned for insufficient funds;

f. Debtor represented that a $6,000.00 cure had been made when the payment was subsequently dishonored;

g. The prior case was dismissed on the Trustee's request;

h. The second case was filed less than four months later;

i. The second plan is materially identical to the failed first plan;

j. Both plans depend upon speculative future income and a $130,500.00 lump sum from unidentified business projects;

k. No substantial financial or personal change has been shown;

l. The second filing occurred six days before an important state-court hearing;

m. An outstanding civil-contempt arrest order was pending;

n. Debtor continued to owe current support arrears; and

o. Debtor failed to comply fully with a state-court payment order immediately after filing the second case.

121.    Considered together, these circumstances prevent Debtor from proving good faith even under the lower preponderance standard.

## IX. DEBTOR SHOULD BE REQUIRED TO PRESENT COMPETENT EVIDENCE, NOT MERELY COUNSEL'S REPRESENTATIONS

122.    To the extent Debtor alleges changed circumstances, increased income, new projects, or the availability of a future lump sum, the Objecting Creditors respectfully request that the Court require competent documentary and testimonial evidence.

123.    At a minimum, Debtor should be required to produce:

a. Current pay stubs and proof of all sources of income;

b. Bank statements from the date of dismissal of the prior case through the present;

c. Federal and Puerto Rico income-tax returns;

d. Executed contracts concerning the alleged new business projects;

e. Evidence of committed funding or accounts receivable;

f. A detailed explanation and documentation concerning the proposed $130,500.00 payment;

g. Evidence establishing how the amount will be net of expenses and available to the Trustee;

h. Proof of every plan payment made in the present case;

i. Proof of current compliance with all post petition domestic-support obligations;

j. Proof of compliance with the July 15, 2026 state-court payment order; and

k. An explanation of the two insufficient-funds payments tendered in the prior case.

124.    Statements of expected future income, unsupported by documents or credible testimony, do not constitute clear and convincing evidence of the feasibility of the proposed plan.

## X. CONCLUSION

As clearly established in Debtor's history before this Honorable Court, this is not a case in which an otherwise compliant debtor experienced a discrete setback and returned to bankruptcy after correcting it.

Debtor received the automatic stay in his first Chapter 13 case and did not make effective plan payments. Despite the Trustee repeatedly seeking dismissal,

debtor was granted multiple opportunities. Even with such opportunities, Debtor accumulated six months of arrears. It is an uncontested fact that two of his payments were returned for insufficient funds. As a result, the prior case was dismissed.

Less than four months later, Debtor filed a second case and proposed a materially identical plan based upon the same speculative future income and the same projected $130,500.00 payment. He has shown no substantial change in his affairs. His conduct immediately after filing further demonstrates continued noncompliance. Under these circumstances, Debtor cannot rebut the statutory presumption of lack of good faith by clear and convincing evidence. Nor can he establish good faith by a preponderance of the evidence. The request to continue the automatic stay should therefore be denied.

**WHEREFORE**, the Objecting Creditors respectfully request that this Honorable Court:

A. **DENY** Debtor's Motion to Continue the Automatic Stay under 11 U.S.C. § 362(c)(3)(B);

B. Determine that Debtor has failed to rebut the presumption that the present case was not filed in good faith as to the Objecting Creditors;

C. Alternatively, determine that Debtor has failed to establish good faith by a preponderance of the evidence;

D. Allow the automatic stay to terminate in its entirety on the thirtieth day following commencement of this case pursuant to 11 U.S.C. § 362(c)(3)(A) and *Smith v. Maine Bureau of Revenue Services*, 910 F.3d 576 (1st Cir. 2018);

E. Upon request, enter an order under 11 U.S.C. § 362(j) confirming the termination of the automatic stay;

F. Permit the Objecting Creditors and the Puerto Rico Court of First Instance to exercise such rights and authority as are otherwise available under applicable nonbankruptcy law after termination of the stay; and

G. Grant such other and further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 24th day of July, 2026.

**s/CARLA ARRAIZA GONZÁLEZ**
**USDC-PR- 221309**
**PO BOX 9023525**
**San Juan, P.R. 00902-3525**
**Tel (787)721-4648**
**carla.arraiza@gmail.com**

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all registered participants, including counsel for Debtor, the Chapter 13 Trustee, the United States Trustee, and all parties who have filed notices of appearance. A copy was also served by first-class mail upon any party not receiving electronic notice at the address appearing in the Court's records.