**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF PUERTO RICO**

**IN RE:**

**AMILCAR NORAT COLLAZO** CASE NO. 26-03166 (ESL)

Debtor CHAPTER 13

**DEBTOR'S REPLY TO OBJECTIONS TO MOTION TO CONTINUE THE AUTOMATIC STAY AND SUPPLEMENTAL SHOWING OF CHANGED CIRCUMSTANCES AND GOOD FAITH**

**TO THE HONORABLE COURT:**

NOW COMES the Debtor, AMILCAR NORAT COLLAZO, through the undersigned attorney, and respectfully submits this Reply to the objections filed by the United States Trustee and creditors Francisco M. Norat González and Sandra L. González Colón to Debtor's Motion to Continue the Automatic Stay pursuant to 11 U.S.C. § 362(c)(3)(B), and in support thereof respectfully STATES AND PRAYS:

**I. INTRODUCTION**

1. The United States Trustee and the Objecting Creditors principally oppose continuation of the automatic stay on the contention that Debtor has failed to demonstrate a substantial change in his financial or personal circumstances since dismissal of his immediately preceding bankruptcy case.
2. More specifically, the United States Trustee points to the fact that Debtor's originally filed Schedule I reflected the same income reported in the prior case and therefore argues that the record, as originally presented, did not demonstrate a substantial change in Debtor's financial circumstances.
3. Similarly, the Objecting Creditors repeatedly emphasize that the Chapter 13 Plan originally filed in this case was materially identical to the plan proposed in the prior proceeding and contend that Debtor failed to identify new employment, a verifiable increase in income, binding business contracts, or other objective circumstances demonstrating an increased likelihood of successful performance.

4. Debtor acknowledges the prior deficiencies in the record. However, the circumstances upon which the objections are premised **have materially changed and are being supplemented through admissible evidence.**

5. Debtor has now obtained steady employment that provides regular and predictable income; has secured and/or lined up two specifically identifiable construction projects; and has filed an Amended Chapter 13 Plan at Docket No. 24, which replaces the previously proposed $130,000.00 lump-sum payment with annual lump-sum payments of $15,000.00 to be funded from the proceeds of existing and future construction contracts.

6. Debtor will likewise amend his schedules as necessary to accurately reflect his present income and financial circumstances.

7. These developments constitute precisely the type of substantial and objectively verifiable change contemplated by 11 U.S.C. § 362(c)(3)(C)(i)(III) and directly address the principal factual basis asserted in both objections.

8. Furthermore, Debtor is willing to provide this Honorable Court with an extraordinary additional assurance of his commitment to successful reorganization: **Debtor agrees that, should he fail to maintain the payments required under the Amended Plan during the first twelve (12) months, the case may be dismissed subject to a bar against refiling for a period of one year which should provide enough time for creditors to legally proceed against debtor, if necessary.**

9. Debtor therefore does not seek another unconditional opportunity to remain under bankruptcy protection. He seeks an opportunity to demonstrate, through actual performance and under materially changed circumstances, that this Chapter 13 reorganization can succeed.

10. It is important to note the procedural history concerning Creditor Sandra González throughout Debtor's prior bankruptcy filings. In Debtor's first bankruptcy case, Case No. 17-06014 BKT, Debtor did not identify Mrs. González as a creditor, and Mrs. González had not asserted or filed any claim against Debtor in either state court or the bankruptcy proceeding. Likewise, in Case No.

18-03605 EAG, Debtor did not identify Mrs. González as a creditor. Mrs. González did not appear in that proceeding until approximately four years after the case was filed, and, as of that time, she had not filed or otherwise pursued a claim against Debtor in any court. In Case No. 25-03825 ESL, Mrs. González was expressly identified as a creditor; nevertheless, she neither filed a proof of claim nor objected to Debtor's proposed Chapter 13 plan. Finally, in the present case, Case No. 26-03166 ESL, Mrs. González has, to date, failed to file a proof of claim. Accordingly, the record demonstrates that Mrs. González was identified as a creditor in only two of Debtor's four bankruptcy cases, including the present case, in which Debtor has proposed a feasible amended plan supported by his current and substantially improved financial circumstances. Thus, Debtor's prior filings should not be characterized as repeated attempts to avoid or frustrate Mrs. González's collection efforts, particularly where she did not timely assert a claim or actively participate in several of those proceedings.

## II. THE PRIOR BANKRUPTCY FAILURES MUST BE CONSIDERED IN THEIR PROPER CONTEXT

11. Debtor does not attempt to minimize his bankruptcy history. He acknowledges that prior proceedings were unsuccessful and that the immediately preceding case was dismissed after Debtor failed to maintain the required Plan payments.

12. The record reflects that Case No. 18-03605 was filed on June 27, 2018, and remained pending until July 5, 2023, when it was ultimately dismissed following Debtor's inability to cure Plan arrears. The immediately preceding Case No. 25-03838 was filed two years after the dismissal and subsequently dismissed on March 25, 2026, following additional payment difficulties. Creditors failed to appear in the "above-mentioned" case.

13. Nevertheless, the inability to successfully complete the prior Chapter 13 proceedings does not, standing alone, establish that the present petition was filed for an improper purpose. The relevant inquiry under § 362(c)(3) includes whether circumstances have materially changed and whether there is now a

reason to conclude that the present case can result in a confirmed Plan that will be fully performed.

14. Debtor's prior financial instability must be understood in light of the manner in which he historically earned his livelihood.

15. Debtor has worked extensively in the **construction industry** and attempted for years to sustain his income through construction-related business activities and projects.

16. Construction income is dependent upon numerous variables, including the availability and timing of projects, the ability to *maintain adequate personnel*, timely completion of work, collection of project proceeds, labor expenses, and other operating costs.

17. Debtor repeatedly encountered difficulties maintaining a reliable workforce. Employee turnover, inconsistent attendance and availability, increasing demands for compensation, and the difficulty of maintaining sufficient personnel to timely perform construction projects materially affected his ability to generate consistent and predictable income.

18. Debtor nevertheless repeatedly attempted to maintain his business, generate sufficient income, satisfy his obligations, and reorganize his financial affairs.

19. Adding to his fragile financial circumstances, Debtor was publicly humiliated after being wrongly accused of criminal conduct in Case No. EIVP202600550-551 before the Court of First Instance, Caguas Ward. This action required Debtor to obtain costly legal representation. Although the case concluded with a judgment in his favor, the legal expenses caused him to fall behind on his proposed Plan payments. The expenses incurred to defend himself were the principal reason Debtor failed to comply with the Plan in his 2025 bankruptcy case. His failure was not a voluntary attempt to dismiss or avoid any legal obligation regarding his children.

20. His prior inability to perform was therefore substantially related to **income instability**. Debtor does not offer these circumstances as an excuse for the prior

defaults, but rather as an explanation of why the circumstances presently before this Court are materially different. The fact is that during the 2025 bankruptcy petition, Debtor had neither steady income nor had consistent employees, which he now has.

## III. THE 2018 BANKRUPTCY ALSO DEMONSTRATES THAT DEBTOR'S HISTORY CANNOT FAIRLY BE REDUCED TO A SCHEME TO DELAY THE OBJECTING CREDITORS

21. The history involving Creditor Sandra L. González Colón is also relevant to the totality of the circumstances.

22. During Case No. 18-03605, Creditor Sandra L. González Colón asserted a child-support claim in the amount of **$91,238.56**, ***more than four years after Debtor commenced that bankruptcy proceeding and more than 10 years after the monthly pension amount was determined in 2009.*** Debtor objected to that claim and contested the amount allegedly due.

23. After entry of the judgment in Case No. G AL2009-0212 before the Court of First Instance, Guayama Part, Debtor and Creditor entered into an extrajudicial agreement pursuant to which Creditor would not pursue child-support payments and Debtor would have no visitation rights or relationship with the parties' children. Creditor did not approve of Debtor's behavior or living conditions and did not want the children around Mr. Norat. Creditor's failure to demand, enforce, or otherwise pursue payment for more than ten years was entirely consistent with the existence and terms of that agreement.

24. During the ten-year period preceding Debtor's second bankruptcy petition, Creditor Sandra L. González Colón never availed herself of the legal remedies available to collect the alleged child-support obligation. Since entry of the 2009 judgment, she did not file any motion before the state court or ASUME seeking enforcement of the support order or payment of the alleged arrears. Creditor knew where to locate Debtor, had the financial means to pursue the available remedies, and possessed his telephone number. Debtor's error was his failure to reduce the extrajudicial agreement to writing and submit it to the state court. Had

he done so, the stipulation would have constituted contemporaneous, objective evidence that Creditor had agreed not to claim child-support payments and would have protected Debtor against her subsequent unilateral change of position and assertion of more than ten years of accumulated arrears.

25. Significantly, the 2018 bankruptcy remained pending for approximately five years. Debtor did not simply obtain bankruptcy protection and immediately abandon the proceeding.

26. During that proceeding, Debtor litigated the claim asserted by Creditor González Colón and obtained a favorable determination concerning said claim.

27. Nevertheless, notwithstanding that favorable result and with approximately one year remaining to complete the proceeding, Debtor ultimately became financially unable to maintain the required Plan payments and the case was dismissed.

28. This history is inconsistent with the suggestion that Debtor's bankruptcy filings were undertaken merely as a mechanism to frustrate the Objecting Creditors.

29. A debtor whose sole intent was delay would have little reason to abandon a bankruptcy proceeding in which he had already successfully litigated a *substantial disputed claim*. The dismissal instead reflects the recurring problem that ultimately undermined Debtor's previous reorganization efforts: **the inability to maintain sufficiently stable income to fund the Plan, including the incredible amount being suddenly claimed for the first time in more than 10 years by Creditor Sandra Gonzalez.**

30. The debtor's two subsequent bankruptcy petitions occurred amid his financial imbalance and considerable claims against him. It must be noted that creditors have successfully appeared in the present bankruptcy petition alleging incredible sums of money that may be attributed principally to creditor Sandra Gonzalez's failure to pursue collection of said claims on a timely basis.

## IV. THE MATERIAL CIRCUMSTANCE THAT CAUSED THE PRIOR FAILURE HAS NOW CHANGED

31. The present case differs materially from the prior proceeding because Debtor has now obtained **steady contracts, and healthy relationship with various clients**, as well as upcoming work projects with the support of steady employees. Please refer to the evidence attached hereto.

32. This is not merely an expectation that Debtor may earn additional income at some unidentified future date. It constitutes an existing and verifiable source of regular income.

33. The significance of Debtor's steady employment cannot be overstated. The principal difficulty that historically affected Debtor's ability to complete his prior bankruptcy proceedings was the unpredictability of income generated through his construction business.

34. Debtor now possesses a regular source of income that is not exclusively dependent upon obtaining construction projects, maintaining an adequate workforce, completing those projects, and thereafter collecting project proceeds.

35. The Objecting Creditors specifically argued that Debtor had failed to demonstrate "new employment" or a "verifiable income increase."

36. That factual premise no longer exists.

37. Debtor has obtained new steady employment and is prepared to substantiate that employment through competent documentary evidence.

## V. DEBTOR NOW HAS TWO IDENTIFIED CONSTRUCTION PROJECTS PROVIDING ADDITIONAL BUSINESS OPPORTUNITIES

38. The Objecting Creditors additionally challenged the feasibility of Debtor's original Plan because it referred generally to "expected new business projects" without identifying the projects, counterparties, projected proceeds, or anticipated dates of performance.

39. Debtor can now provide substantially greater specificity.

40. In addition to his steady employment, Debtor has secured and/or is in the process of finalizing two identifiable construction projects.

41. The first project is with **Mr. Santiago Ulloa** concerning construction work to be performed in **Cupey, Puerto Rico**. Please refer to the evidence attached hereto.

42. The second project is with **Mr. Juan Vázquez** concerning construction work to be performed in **Río Grande, Puerto Rico**. Accordingly, the present record no longer involves merely an unidentified hope that additional construction work may eventually become available. Please refer to the evidence attached hereto.

43. Debtor can identify the projects, the contracting parties, the locations where the work is to be performed, and, upon filing the corresponding agreements, the financial terms associated with those projects.

44. More importantly, however, **the feasibility of the Amended Plan will not depend exclusively upon those projects.**

45. Debtor's steady employment provides a predictable income foundation for the Plan. The construction projects constitute an additional potential source of revenue that further strengthens Debtor's ability to successfully perform. Please refer to the evidence attached hereto.

## VI. DEBTOR HAS FILED A MATERIALLY AMENDED CHAPTER 13 PLAN

45. Both objections place considerable emphasis upon the fact that the Plan originally filed in the present case essentially repeated the payment structure contained in the immediately preceding case.

46. The Objecting Creditors specifically identify the original proposal as providing monthly payments beginning at $1,000.00 and progressively increasing thereafter, together with the anticipated incredible lump-sum payment.

47. That Plan has been **materially amended** at docket No. 24.

48. Based upon Debtor's steady employment and present financial circumstances, Debtor has proposed annually increasing payments, and annual lump sum payments of $15,000.00 eliminating the incredible lump- sum payment previously proposed to be funded over three years. Consequently, the proposition that Debtor simply refiled the same unsuccessful Plan is no longer accurate.

49. Debtor is proposing a substantially increased monthly payment supported by changed financial circumstances and verifiable present income.

50. The increased Plan payment is not merely a representation that Debtor intends to do better this time. It is the financial consequence of an objective change in his circumstances.

## VII. DEBTOR IS WILLING TO ACCEPT A BAR TO REFILING AS AN ADDITIONAL GUARANTEE OF PERFORMANCE

51. Debtor recognizes the Court's legitimate concern arising from the history of previous bankruptcy proceedings.

52. He likewise recognizes that promises of future performance, standing alone, may be insufficient to overcome the statutory presumption applicable under § 362(c)(3)(C).

53. Debtor therefore offers the Court something substantially more than another promise.

54. To demonstrate his commitment to this reorganization, **Debtor agrees that continuation of bankruptcy protection may be expressly conditioned upon his strict compliance with the payments required under the Amended Chapter 13 Plan during the first twelve (12) months of this case.**

55. Should Debtor fail to maintain the required Plan payments during that twelve-month period, Debtor agrees that the case may be dismissed and consents to the imposition of a **bar against refiling for a period of one year**, subject to the terms ultimately approved by this Honorable Court.

56. This proposed safeguard materially undermines any contention that the present petition represents an effort merely to obtain another period of automatic-stay protection without meaningful consequences for nonperformance.

57. Debtor is placing his future ability to seek bankruptcy protection at risk based upon his commitment that the materially improved financial circumstances now existing will permit him to perform.

58. In other words, **Debtor is prepared to have his good faith measured by his actual performance.** Nevertheless, creditors have legal remedies available during the life of the plan.

## VIII. SULLIVAN AND PUFFER REQUIRE A FACT-SPECIFIC TOTALITY-OF-THE-CIRCUMSTANCES ANALYSIS

59. *In Sullivan v. Solimini* (In re Sullivan), 326 B.R. 204, 211–13 (B.A.P. 1st Cir. 2005), the Bankruptcy Appellate Panel for the First Circuit expressly adopted the totality-of-the-circumstances test for determining whether a Chapter 13 petition was filed in bad faith. Sullivan explains that the good-faith inquiry is fact intensive, multifaceted, and conducted on a case-by-case basis; it is not resolved merely by counting prior filings or isolating one unfavorable fact.

60. Under Sullivan, courts generally consider: (1) the debtor's accuracy in stating debts and expenses; (2) the debtor's honesty in the bankruptcy process, including attempted deception or misrepresentations; (3) whether the Bankruptcy Code is being unfairly manipulated; (4) the type of debt sought to be discharged; (5) whether that debt would be dischargeable in Chapter 7; and (6) the debtor's motivation and sincerity in seeking Chapter 13 relief. Id. at 212. The debtor's filing history and whether the petition was intended only to defeat state-court litigation are also relevant insofar as they bear upon manipulation of the Code and the debtor's motivation and sincerity. Id. at 212–13.

61. Sullivan further holds that the ultimate question is whether the debtor is attempting to thwart creditors or, instead, is making an honest effort to repay them to the best of his ability. Id. at 213. Although Sullivan states that the objecting creditor ordinarily bears the burden when bad faith is asserted as cause for dismissal under § 1307(c), the present motion arises under § 362(c)(3). Debtor therefore recognizes that, because the statutory presumption applies here, he must rebut that presumption by clear and convincing evidence under § 362(c)(3)(B).

62. The First Circuit subsequently reinforced this approach in *Berliner v. Pappalardo (In re Puffer)*, 674 F.3d 78, 81–83 (1st Cir. 2012). Puffer involved a so-called

"fee-only" Chapter 13 plan under which the debtor proposed monthly payments principally for payment of counsel's fees, while unsecured creditors would receive no meaningful distribution. The bankruptcy court treated such plans as categorically filed in bad faith.

63. The First Circuit rejected that categorical approach. It held that good faith is an equitable concept governed by the totality of the circumstances and that equitable concepts are "peculiarly insusceptible to per se rules." Id. at 82. Although the court cautioned that fee-only plans present obvious dangers and may require special circumstances, it held that the unusual structure of a plan does not, standing alone, establish bad faith. Id. at 82–83. The court therefore vacated the bad-faith determination and remanded for an individualized examination of the complete record.

64. Puffer is particularly instructive here because the objections invite the Court to infer bad faith principally from Debtor's prior dismissals and the structure of his earlier proposals. Those facts are relevant, but Puffer precludes converting them into a per se rule. The Court must consider them together with Debtor's present steady employment, documented income, identified construction opportunities, amended funding terms, acknowledgment of the obligations, and willingness to accept meaningful consequences for renewed nonperformance.

65. The facts that supported bad faith in Sullivan were markedly different. A state court had found that Sullivan induced her sister to transfer an interest in real property in exchange for a promise to pay $40,000 that Sullivan never intended to honor. Id. at 206. Sullivan then filed four Chapter 13 cases. Her prior cases included failures to make plan payments, produce requested documents, provide evidence of income and expenses, and timely file schedules, a statement of financial affairs, and a plan. Id. at 206–10, 213–14.

66. In Sullivan's fourth case, the debtor claimed surplus foreclosure proceeds as exempt while simultaneously proposing to use those same proceeds to fund her plan. The bankruptcy court found that the case was an attempt to obtain control of the proceeds and revisit a state-court interpleader dispute, rather than to

satisfy the judgment. Her disposable income had increased by only $11 from the prior unsuccessful case, and creditors had nothing material to gain through Chapter 13 that they could not obtain outside bankruptcy. Id. at 210–11, 213–15. On that record, the Panel upheld the finding that Sullivan's purpose was to obtain the surplus proceeds—not to pay the judgment. Id. at 215.

67. The record here supports the opposite inference. Debtor is not proposing to extract or retain a disputed fund while avoiding payment of the Objecting Creditors. He seeks to continue the stay so that his domestic support obligations and other allowed claims may be addressed through an organized Chapter 13 repayment mechanism. Unlike the nominal $11 income change in Sullivan, Debtor relies upon new steady employment, documented regular income, two identified construction opportunities, and a materially amended Plan that replaces the previously proposed $130,000 lump-sum payment with annual $15,000 lump-sum payments funded by existing and future construction contracts.

68. The Sullivan factors therefore favor Debtor. First, Debtor is supplementing and amending the record, so his income and present financial circumstances are accurately disclosed. Second, he has identified the employment, projects, counterparties, and locations supporting his projections rather than relying upon an undisclosed asset or an internally inconsistent funding source. Third, the Amended Plan and the proposed twelve-month performance condition demonstrate use of Chapter 13 for repayment rather than unfair manipulation of the Code.

69. Fourth, Debtor does not contend that the domestic-support obligations may simply be discharged or avoided; he acknowledges their treatment under the Bankruptcy Code and proposes a mechanism for payment of allowed claims. Fifth, the nature and nondischargeability of the asserted obligations, although relevant under Sullivan, do not establish bad faith by themselves. The Panel's analysis turned upon the entire record, including Sullivan's underlying fraudulent conduct, serial unsuccessful filings, inconsistent positions, lack of meaningful

financial change, and demonstrated objective of obtaining the foreclosure surplus without paying the judgment.

70. Finally, Debtor's motivation and sincerity are supported by objectively verifiable circumstances and meaningful consequences for nonperformance. He has accepted increased funding obligations and offers to condition continuation of the stay upon timely performance during the first twelve months, with dismissal and a one-year bar to refiling in the event of renewed default. Those commitments are inconsistent with an intent merely to delay or thwart creditors and instead evidence an honest effort to repay them to the best of his present ability.

71. Accordingly, Sullivan does not support treating Debtor's prior dismissals as a per se finding of bad faith. Applied as Sullivan requires through a case-specific evaluation of the entire record, the substantial change in income, identified projects, amended funding structure, full acknowledgment of the claims, and proposed performance safeguards rebut the inference that this petition was filed without a genuine intention or ability to perform.

## IX. THE TOTALITY OF THE CIRCUMSTANCES NOW SUPPORTS A FINDING OF GOOD FAITH

72. The Objecting Creditors correctly recognize that the determination of good faith under § 362(c)(3) requires consideration of the totality of the circumstances, including the reasons for dismissal of the prior case, whether the circumstances responsible for the prior failure have been corrected, whether a substantial and verifiable financial change has occurred, and the likelihood that the new Plan will be fully performed.

73. Considered under that standard, the present circumstances establish substantially more than existed when Debtor initially filed his Motion.

74. Debtor now presents:

a. **Steady employment and regular income;**

b. Documentary evidence establishing employment and compensation;

c. An **Amended Chapter 13 Plan providing for a substantially increased monthly payment**;

d. Two specifically identified construction projects with Mr. Santiago Ulloa in Cupey and Mr. Juan Vázquez in Río Grande in addition to proposed quotes;

e. Contracts and/or agreements documenting those projects;

f. An income structure that no longer depends exclusively upon unpredictable construction-business revenues;

g. A commitment to making the required post-petition payments;

h. A willingness to demonstrate performance during the critical first twelve months of the Plan; and

i. Consent to a bar against refiling if Debtor fails to perform during that period.

75. These are not merely subjective assurances of future success.

76. They constitute objective circumstances from which the Court may determine that the conditions that caused the prior case to fail have materially changed and that the present Chapter 13 proceeding has a substantially greater probability of successful performance.

77. Section 362(c)(3) does not require a debtor to prove that his prior bankruptcy history was flawless. If that were the standard, continuation of the stay following a prior dismissal would rarely, if ever, be available.

78. Rather, the statute requires Debtor to demonstrate good faith and, where the statutory presumption applies, to rebut that presumption by clear and convincing evidence.

79. Debtor respectfully submits that his new steady employment, documented income, materially increased Plan payments, specifically identified additional construction projects, and willingness to accept a substantial refiling restriction upon renewed default collectively satisfy that burden.

## X. CONTINUATION OF THE STAY WILL FURTHER, RATHER THAN FRUSTRATE, PAYMENT OF THE CLAIMS

80. The claims asserted by the Objecting Creditors are substantial domestic support obligations and are treated accordingly under the Bankruptcy Code.

81. Debtor is not seeking continuation of the automatic stay for the purpose of avoiding those obligations.

82. On the contrary, Debtor seeks the opportunity to use his newly stabilized financial circumstances and increased income to fund a Chapter 13 Plan providing an organized mechanism through which the allowed claims may be addressed.

83. Termination of the stay at precisely the point when Debtor has finally obtained stable employment and has the ability to substantially increase his Plan payments would undermine the very reorganization that may provide the most effective mechanism for payment.

84. Continuation of the stay, subject to the safeguards proposed herein, provides the Court and creditors with the opportunity to evaluate Debtor not merely upon his prior failures, but upon his **actual performance under his present and materially changed circumstances.**

## XI. CONCLUSION

85. Debtor does not ask this Honorable Court to disregard his prior bankruptcy history.

86. He asks the Court to consider that history together with the significant developments that have occurred and the concrete measures Debtor is now taking to ensure that the circumstances that caused his previous failures are not repeated.

87. The central premises underlying both objections that Debtor simply filed the same case, proposed the same Plan, possessed the same income, consistent employees, and relies upon the same unidentified future business opportunities—**have materially changed.**

88. Debtor now has steady employment; he has filed an Amended Chapter 13 Plan providing for substantially increased monthly payments; he has two specifically

identified construction projects supported by agreements to be presented to the Court; and he is willing to condition his continued bankruptcy protection upon actual performance during the first twelve months.

89. Under the totality of these circumstances, Debtor respectfully submits that he has demonstrated sufficient changed circumstances and good faith to warrant continuation of the automatic stay pursuant to 11 U.S.C. § 362(c)(3)(B).

**WHEREFORE,**

Debtor respectfully requests that this Honorable Court:

**A.** DENY the objections filed by the United States Trustee and creditors Francisco M. Norat González and Sandra L. González Colón;

**B.** FIND that Debtor has demonstrated a substantial change in his financial circumstances and has rebutted the presumption under 11 U.S.C. § 362(c)(3)(C) by clear and convincing evidence;

**C.** FIND that the present Chapter 13 petition was filed in good faith as to the creditors sought to be stayed;

**D.** GRANT Debtor's Motion to Continue the Automatic Stay pursuant to 11 U.S.C. § 362(c)(3)(B);

**E.** TAKE NOTICE OF Debtor's Amended Chapter 13 Plan;

**F.** TAKE NOTICE OF Debtor's new steady employment, employees, and the additional construction projects identified herein;

**G.** In the alternative, CONDITION continuation of the automatic stay upon Debtor's timely performance of the Amended Plan during the first twelve months, with such appropriate refiling restriction as the Court may determine in the event of renewed default; and

**H.** GRANT such other and further relief as this Honorable Court may deem just and proper.

## ***CERTIFICATE OF SERVICE***

I HEREBY CERTIFY on this same date I electronically filed the foregoing document with the clerk of the court using the CM/ECF System which will sent notification of such filing to the following: Chapter 13 Trustee, Jose R. Carrion; US Trustee and to all creditors registered to said system. On this date, I have sent copy of said document by regular mail to all parties in interest that are non CM/ECF participants as of the creditor matrix attached hereto.

In San Juan, Puerto Rico, this 14th day of August 2026.


**ALEXANDRA BIGAS LAW OFFICE**
Attorneys for Debtor
P.O. Box 7462
Ponce, P.R. 00732-7462
Tel. 844-1444; Fax 842-4090

By: /s/ Alexandra Bigas Valedon
**ALEXANDRA BIGAS VALEDON**
U.S.D.C. NO. 220109
alexandra.bigas@gmail.com

# CONTRATO DE SERVICIOS PROFESIONALES

**COMPARECEN:**

**DE UNA PARTE :** Coamo Builders Corp., con el número de registro 389,042, y el número de Seguro Social Patronal 66-0871060, una firma de trabajos en construcción y remodelación de residencias, representada en este acto por su socio principal, Sr. Amilcar Norat Collazo, mayor de edad, casado, vecino de Coamo, Puerto Rico, en adelante denominado EL CONTRATISTA.................................................................................

**DE LA OTRA PARTE:** Dr. Santiago Olloa, mayor de edad, casado (a), vecino (a) de la Urbanización Mirador de Cupey, Calle7, G-1,San Juan, Puerto Rico, el cual representa a EL DUEÑO. Ambas partes tienen la capacidad legal para formalizar el presente acto, y de conformidad, libre y espontáneamente, ...........................................................................

**EXPONEN:**

**PRIMERO:** Que EL CONTRATISTA, en el interés de desempeñar de la forma más adecuada posible sus funciones para hacer los trabajos relacionados a la construcción de mejoras a una residencia existente, nuevo muro de retención de tierra, nuevo dormitorio, terraza en el segundo nivel y algunos trabajos de remodelación y mejoras que se enumeran en las Cláusulas y Condiciones de este proyecto. Estos trabajos se realizarán en una residencia de su propiedad, localizado en la Urbanización Mirador de Cupey, en la ciudad de San Juan, Puerto Rico...........................................................................................

**SEGUNDO:** EL DUEÑO, certifica que posee los recursos económicos para poder realizar la construcción antes indicada en el proyecto de referencia....................................

**TERCERO:** Las partes, en el cáracter que cada uno ostenta, convienen otorgar el presente Contrato para Prestación de Servicios Profesionales, sujeto a las siguientes:........

**CLAUSULAS Y CONDICIONES**

**PRIMERA: Alcance del Trabajo**

EL CONTRATISTA efectuará un servicio contínuo durante toda actividad de construcción, mientras ésta exista, localizada en San Juan, Puerto Rico, con el objetivo de asegurar el cumplimiento estricto de todo lo dispuesto en los Planos y Especificaciones del proyecto y/o acuerdos sotenidos, para que el resultado esperado por EL DUEÑO, sea el presentado y el plasmado en los planos de construcción suministrados y acuerdos..........................................................................................

CamScanner

**SEGUNDA:** Los servicios a prestarse por parte de EL CONTRATISTA, consiste de la construcción de los trabajos que se describen a continuación. Estos trabajos están conforme a planos suministrados y/o acuerdos sostenidos durante las reuniones. Entre los trabajos que realizará se encuentran.........................................................

**TRABAJOS A REALIZAR PARA CONSTRUCCION DEL MURO**

- Excavación para construcción cimientos para un muro de 120 pies de largo
- Instalación de acero de refuerzo, formas y vaciado de hormigón para construcción de cimientos
- Instalación de acero de refuerzo, formas y vaciado de hormigón para construcción del muro de 10 pies sobre el nivel del terreno. El muro tendrá 8" de espesor, doble matre de acero de refuerzo, zapata tendrá un mínimo de 4 pies de ancho y 12" de espesor
- Electricidad para proveer luces en el muro
- Empañetado del muro
- Aplicación de sellador y pintura en el muro construido. El sellador y la pintura será provista por el Dueño
- Remoción y disposición de la tierra
- Vaciado de piedra en la parte de atrás del muro con algún sistema de recolección de agua

**TRABAJOS A REALIZAR PARA CONSTRUCCION DE UN CUARTO LADO DERECHO**

- Excavaciones para construcción de nuevos cimientos
- Instalación de acero de refuerzo, formas y vaciado de hormigón para construcción de cimientos, losa de piso, columnas, paredes, vigas y techos
- Instalación de paredes de bloques
- Empañetado de elementos construidos
- Electricidad típica para las facilidades
- Instalación de puertas y ventanas provistas por el Dueño
- Instalación de topping de piso y losa provista por el Dueño
- Creación de acceso por el área del recibidor
- Aplicación de sellador y pintura en superficies. El sellador y la pintura será provista por el Dueño

**OTROS TRABAJOS**

- Construcción de aleros de 40 pies de largo por 7 pies de ancho, lo cual dará acceso desde la terraza hasta el nuevo cuarto
- Construcción de desagües para la recolección de aguas pluviales alrededor de la residencia
- Construcción de pisos separados por áreas verdes entre la residencia y el nuevo muro
- Construcción del driveway al lado derecho de la residencia

**TRABAJOS ADICIONALES**

- Remoción de losa en escalera de la entrada principal
- Desvastación de hormigón para crear niveles, construcción de topping e instalación de nueva losa provista por el Dueño
- Remoción de piedras debajo de la escalera que da acceso al segundo nivel, vaciado de hormigón es esta área, construcción de topping e instalación de losa provista por el dueño
- Remoción de jardinera interior e instalación de losa provista por el dueño en esta área
- Arreglo de mocheta, arreglo de empañetado, resanado de algunas paredes, remoción de algunas losas en varias áreas de la residencia, instalación de nueva losa provista por el dueño
- Construcción de terraza en hormigón sobre la marquesina la cual tendrá 30 pies ancho por 25 pies de largo. Esto incluye todos los trabajos relacionados con columnas, vigas, techos, empañetado, sellador, pintura, topping de piso, losa, electricidad y recogido de agua.

CamScanner

**TERCERO:** EL CONTRATISTA podrá hacer recomendaciones a EL DUEÑO, para la posterior aprobación de todo material y equipo a ser incorporado a la estructura. De igual forma, verificará el diseño mostrado en los Planos de Construcción, pero no tratará por sí solo de suplir la información que faltase. Si en su opinión el diseño en alguna parte no fuere adecuado, contiene algún error de inclusión u omisión, la solicitud para su corrección se referirá a EL DUEÑO, quien tomará la acción a seguir y referirá el caso para la determinación correspondiente.......................................................................................

**CUARTO:** EL CONTRATISTA en ningún caso permitirá que se comiencen trabajos nuevos o diferentes a los indicados en los Planos y Especificaciones, sin antes haberse aprobado una Orden de Cambio mediante el procedimiento establecido en la industria......

**QUINTO:** Ambas partes entienden que este Contrato no constituye una relación de empleado-patrono...................................................................................................................

**SEXTO:** EL DUEÑO será responsable de suplir los materiales que hayan sido acordado en reuniones previas a la firma del Contrato, los cuales no están incluidos en este Contrato...............................................................................................................

**SEPTIMO: Vigencia**

La vigencia de este Contrato y de la construcción de la obra será a partir del 30 de Marzo de 2021, hasta el 30 de Octubre de 2026. Esta vigencia está condicionada a los días perdidos por actos de Dios o fuerza mayor, los cuales serán acordados con EL DUEÑO o su representante.....................................................

Del CONTRATISTA no finalizar la obra en el término antes indicado no se le impondrán cargos por daños líquidos...............................................................................................

Del CONTRATISTA finalizar la obra antes del término antes indicado no se le compensará con ninguna bonificación adicional al Contrato...................................

**OCTAVO: Términos de Pago**

EL CONTRATISTA presentará una Factura la cual será revisada por EL DUEÑO y luego de ser acordado por ambas partes el pago se emitirá no más tarde de tres (3) días. EL DUEÑO no retendrá ningún monto del total facturado en cada certificación. Al momento de firmar este Contrato, EL DUEÑO emitirá un pago inicial para costos incurridos en Movilización de **$28,000.00** el cual será deducido del monto total de este contrato el cual suma la cantidad de **$182,000.00**. El balance pendiente se pagará mediante de certificaciones de pagos por trabajos realizados...................................

CamScanner

**NOVENO:** AMBAS PARTES manifiestan que han leído y entendido todo el contenido del presente Contrato y así lo aceptan por encontrar que el mismo está redactado a nuestra entera satisfacción y que establece fielmente lo que hemos pactado.......................

**DECIMO:** El CONTRATISTA tiene que evidenciar copia del cumplimiento del Seguro de Responsabilidad Pública y del Fondo del Seguro del Estado, en un término no mayor de cinco (5) días calendario, luego de la firma del Contrato. Del CONTRATISTA no cumplir con lo antes mencionado, el DUENO se verá en la obligación de penalizar la obra en construcción, hasta que se le presente al DUENO los documentos antes mencionado. De surgir la paralización de la obra, todos los daños económicos que esto pudiese ocasionar, serán responsabilidad del CONTRATISTA................................

**UNDECIMO:** Los planos de construcción serán firmados por ambas partes, como documento oficial de construcción de la obra. El CONTRATISTA mantendrá, todos los días, limpio y sin escombros los límites del proyecto..........................................

- Cualquier daño que la construcción le realice a los colindantes al proyecto, serán corregidas y reparadas por el CONTRATISTA, inmediatamente a su costo...............................................................................
- De surgir de la construcción trabajo deficiente, los mismos tendrán que ser corregidos por el CONTRATISTA a su costo.......................................
- El DUENO tendrá la prerrogativa de no pagar trabajos deficientes, hasta que los mismos sean corregidos a satisfacción del DUENO............................
- El CONTRATISTA será responsable de implementar la seguridad en el transcurso de la construcción, en las cuales cumplan con OSHA y/o cualquier otra agencia concerniente a seguridad en Puerto Rico..............................
- Los pagos parciales de la construcción se realizarán con una factura, en la cual se desglose todas las partidas de construcción, en la que se demuestre cantidades económicas y por unidad, el cual se adjunta a este Contrato..........

**DUODECIMO: Otras cláusulas y condiciones**

Se acuerda que el DUEÑO pagará al contratista la cantidad de **Ciento ochenta y dos mil dólares ($182,000.00)** según se estipula en desglose para pago, el cual se utilizará para **realizar facturas semanales que serán sometidas para ser pagadas en los próximos 3 días.** EL DUEÑO representa tener el financiamiento disponible para el pago de los trabajos según han sido convenidos en el presente contrato. La falta de pago de cualquier suma adeudada será causa suficiente para que el CONTRATISTA pueda paralizar la obra, viniendo el DUEÑO obligado al pago adeudado más los daños ocasionados.........................................................................................

En aquellas instancias en que de acuerdo con el contrato sea requerido someter al DUEÑO para su aprobación cualquiera de los siguientes: "Shop Drawing", muestras de material, literatura de materiales, o cualquier otro tipo de "Submittal", el DUEÑO se obliga a responder por escrito dentro de diez (10) días de su sometimiento..................

El CONTRATISTA se obliga a corregir todos los defectos con relación a los trabajos siempre y cuando dichos defectos surjan en las obras realizadas por este y que aparezcan

CamScanner

en la unidad de vivienda objeto de este contrato dentro de los términos indicados en los reglamentos del Departamento de Asuntos del Consumidor (DACO)........................

Cuando una de las partes esté incumpliendo sus obligaciones, la otra parte notificará por escrito dicho incumplimiento y las razones en las cual se basa su alegación dentro de los siete (7) días siguientes al momento en que se percate del incumplimiento. La otra parte tendrá siete (7) días a partir del recibo de la notificación para corregir el incumplimiento o presentar sus argumentos. De no lograrse un entendido, las partes acuerdan que todas las controversias relacionadas a este contrato serán resueltas mediante el mecanismo de arbitraje de conformidad con la ley de Arbitraje de Puerto Rico (32 L.P.R.A secc. 3201 et seq.). El procedimiento comenzará con la notificación de una parte a la otra de someter determinada controversia a arbitraje..............................................................

El CONTRATISTA representa que mantiene una póliza vigente del Fondo del Seguro Del Estado para cubrir sus empleados...........................................................

El CONTRATISTA se compromete, además, a mantener vigente una póliza de responsabilidad pública general (cubierta de un millón de dólares) para cubrir cualquier daño que pueda sufrir o alegar haber sufrido un tercero por actuaciones del CONTRATISTA, sus empleados, subcontratistas y los empleados de estos. El CONTRATISTA indemnizara a los dueños por cualquier daño que le ocasione a estos el incumplimiento del CONTRATISTA o de cualquier subcontratista de este con las obligaciones mencionadas en este párrafo y también indemnizara por cualquier reclamación que le presente cualquier persona al DUENO por daños ocasionados por el CONTRATISTA, sus empleados, subcontratistas y los empleados de estos.................

El CONTRATISTA será responsable por velar por la seguridad de cualquier equipo o material de su propiedad que utilice con relación a la obra y asumirá la falta, pérdida o daño de algún equipo o material de su propiedad durante la construcción de la obra.........

Sera responsabilidad del CONTRATISTA los atrasos de subcontratistas por falta de trabajo completado.......................................................................................

Sera responsabilidad del CONTRATISTA los danos causados por sus empleados a trabajo terminado y/o en proceso del mismo contratista como de los subcontratistas........

No será responsabilidad del CONTRATISTA los atrasos por falta de material, equipo y/o toma de decisiones que sean responsabilidad del DUEÑO......................................

En el caso que haya un cambio en el sistema contributivo o en impuestos de ventas, se añadirán los costos adicionales que esto produzca tanto en materiales como en servicios contratados y otros.................................................................................

EL CONTRATISTA entregara por escrito en cada certificación entregada al DUEÑO los días en que el CONTRATISTA no pudo trabajar en la obra debido a razones atribuibles exclusivamente al DUEÑO para que así cuenten como días adicionales al término máximo para realizar la obra acordado por las partes en este contrato........................

El CONTRATISTA se compromete a completar las labores para las que es contratado y desglosadas, en un término de _____ meses desde el comienzo de la misma en adición de las extensiones de tiempo aprobadas en cada certificación,...................................

Se define como terminación sustancial el momento en que se haya alcanzado el 90% del valor total del proyecto, o en caso de entregas parciales un 90% del valor total de la porción entregada. Una vez llegado este momento, el CONTRATISTA solicitará al DUEÑO para que luego de inspeccionar los trabajos, prepare un listado de deficiencias a ser corregidas por el CONTRATISTA. El listado de deficiencias deberá ser entregado al CONTRATISTA no más tarde de cinco (5) días luego de la solicitud para la inspección, desde cuyo momento el CONTRATISTA tendrá diez (15) días para su corrección. Una vez corregido, el CONTRATISTA lo notificará al DUEÑO, quien gestionará la re-inspección dentro de los próximos diez (5) días. Una vez verificada la corrección de las deficiencias se entenderá que los trabajos han sido aceptados. Se acuerda que de existir

CamScanner

señalamientos nuevos en la re-inspección estos serán tratados como garantía y no como deficiencia para fines de la aceptación de los trabajos y/o pago del monto adeudado.

Disposiciones adicionales;

1- Todos los tiempos establecidos son en días calendarios.
2- Será por cuenta y cargo del DUEÑO la remoción de cualquier material tóxico o materiales de naturaleza inusual que aparezcan durante la construcción del "site" o la vivienda.
3- En el caso de los materiales que compra el contratista, en la eventualidad de un aumento de precio en el mercado que sea mayor al 10% el Contratista cobrara la diferencia en costo al dueño, demostrando esta diferencia con los respectivos recibos.
4- El DUEÑO proveerá a su costo servicio de agua y electricidad temporera para la fase de construcción las cuales estarán disponibles al comienzo de la obra.
5- La seguridad contra vandalismo o robos dentro del perímetro del área de construcción será por cuenta y cargo del DUEÑO. Sin embargo, el Dueño no se hace responsable de las herramientas y materiales misceláneos que puedan ser hurtados durante el proceso de construcción. Al igual que toda maquinaria pesada será responsabilidad del contratista en tomar medidas de precaución para evitar daños a sus equipos.
6- Es responsabilidad del CONTRATISTA mantener las áreas limpias, frente de la propiedad entiéndase aceras cunetas calle y áreas verdes. El CONTRATISTA hará una limpieza diaria de dichas áreas.
7- El CONTRATISTA mantendrá el orden de sus empleados y subcontratistas, control en tono de voz, vocabulario y el no uso de radio en el proyecto.
8- Todo empleado y subcontratista del CONTRATISTA deberá estar debidamente identificado, de igual manera la vestimenta deberá ser la apropiada y se prohíbe el uso de pantalones cortos, tennis, camisas sin mangas, gorras y gafas.
9- Ningún empleado y subcontratista está autorizado a tomar fotos del proyecto, únicamente el CONTRATISTA, inspector y arquitecto están permitidos a tomar fotos de la obra.
10- Este contrato constituye todos los acuerdos llegados entre las partes y modifica toda negociación previa de conformidad.

Para que así conste suscribimos el mismo de conformidad.

En San Juan, Puerto Rico, a 30 de Marzo de 2021.

Área de Anejos
Sr. Amílcar Norat Collazo
EL CONTRATISTA

Dr. Santiago Olloa
EL DUEÑO

CamScanner

# CONTRATO DE SERVICIOS PROFESIONALES

**COMPARECEN:**

**DE UNA PARTE :** Coamo Builders Corp., con el número de registro 389,042, y el número de Seguro Social Patronal 66-0871060, una firma de trabajos en construcción y remodelación, representada en este acto por su socio principal, Sr. Amílcar Norat Collazo, mayor de edad, casado, vecino de Coamo, Puerto Rico, en adelante denominado EL CONTRATISTA..........................................................................................................................

**DE LA OTRA PARTE:** Juan A Vasquez, mayor de edad, casado (a), vecino (a) del sector las Picuas en Río Grande el cual representa al DUEÑO. Ambas partes tienen la capacidad legal para formalizar el presente acto, y de conformidad, libre y espontáneamente..................................................................................

**EXPONEN:**

PRIMERO: Que EL CONTRATISTA, en el interés de desempeñar de la forma más adecuada posible sus funciones para hacer los trabajos relacionados a la construcción de la residencia en el Sector Las Picuas en Río Grande .

...........................................................................................................................

SEGUNDO: EL DUEÑO, certifica que posee los recursos económicos para poder realizar la construcción antes indicada en el proyecto de referencia....................................

TERCERO: Las partes, en el carácter que cada uno ostenta, convienen otorgar el presente Contrato para Prestación de Servicios Profesionales, sujeto a las siguientes:.......................

**CLÁUSULAS Y CONDICIONES**

**PRIMERA: Alcance del Trabajo**
EL CONTRATISTA efectuará un servicio continuo durante toda actividad de construcción, mientras ésta exista, localizada en Rio Grande, Puerto Rico, con el objetivo de asegurar el cumplimiento estricto de todo lo dispuesto en las especificaciones del proyecto y/o acuerdos sostenidos, para que el resultado esperado por EL DUEÑO, sea el presentado..........................................................................................

**SEGUNDA:** Los servicios a prestarse por parte de EL CONTRATISTA, consiste en la construcción de la residencia, la cual tendrá mil trescientos treinta y ocho pies cuadrados de dos niveles. Estos trabajos están conforme a acuerdos sostenidos y planes

CS CamScanner

suministrados durante reuniones con EL DUEÑO. Entre los trabajos que realizarán se encuentran.........................................................................

- Construcción de residencia en cemento, la cual se construirá desde sus cimientos, incluyendo zapatas, pisos columnas, paredes de hormigón y de bloques, vigas y techos . Los techos serán de nueve pies de alto.
- La residencia será de dos niveles la cual contará con un espacio abierto en el primer nivel con baño y tendrá una pared hasta mitad en el lateral derecho y al frente de la residencia. La misma tendrá media pared en el lado izquierdo y en la parte frontal de la residencia.
- El segundo nivel contará con dos habitaciones, sala comedor, cocina, dos baños, laundry y balcón.
- Estos trabajos incluyen trabajos de electricidad completos, trabajos de plomería pluvial, trabajos de plomería sanitaria y empañetado de todo lo construido. La misma contará con la construcción de plomería terrestre hasta el frente de la propiedad incluyendo la caja del contador.
- Construcción de plomería necesaria para toda la residencia.
- Todos los materiales que se utilizarán en dicha residencia estarán aprobados bajo el código de ley de construcción en Puerto Rico.
- Incluirá la construcción de un pozo muro, la construcción de una entrada desde la residencia hasta la carretera, la construcción de un muro en el frente de la residencia y facilidades para un portón eléctrico.
- Estos trabajos incluyen arreglo de terreno, disposición de escombros, aplicación de primer y pintura, construcción de "toppings", instalación de lozas tanto en pisos como en paredes de baño, instalación de servicios sanitarios, instalación de utilidades e instalación de puertas.
- La compra y aplicación del primer será administrada por el contratista. El dueño comprará la pintura.
- La construcción tendrá un techo falso para realizar los trabajos en niveles similares al dibujo suministrado.
- Está incluido la compra e instalación de las tejas.
- Incluye la construcción de facilidades eléctricas necesarias en la residencia y construcción de tubería hasta el pedestal incluyendo el pull-out.
- Estos trabajos incluyen la demolición del baño y un pozo de muro existente.
- Está incluido el recogido y disposición de escombros.
- Las garantías de los trabajos realizados en la nueva residencia se acoplan a las garantías ya pautadas por la industria de construcción de Puerto Rico.
- Las paredes de bloques serán las paredes divisorias interiores, todas las demás paredes exteriores serán en hormigón.
- Las varillas en paredes serán de media pulgada, las varillas en vigas y techos serán de ¾" y media pulgada.
- Las varillas a utilizarse en columnas serán de ¾".

CamScanner

- las varillas a utilizarse en piso serán de ¾" y media pulgada.
- Las varillas a utilizarse en zapatas serán de ¾" y media pulgada.
- La corporación otorgará al dueño un seguro de responsabilidad pública de **un millón de dólares** para proteger tanto al dueño, vecinos, suplidores, subcontratistas y daños a terceros. Con este seguro el contratista se responsabiliza de todo daño o acción en contra del dueño.
- Incluye póliza Fondo del Seguro de estado y Seguro de responsabilidad pública.

**TERCERO:** EL CONTRATISTA podrá hacer recomendaciones a EL DUEÑO, para la posterior aprobación de todo material y equipo a ser incorporado a la estructura. Si en su opinión el diseño en alguna parte no fuere adecuado, contiene algún error de inclusión u omisión, la solicitud para su corrección se referirá a EL DUEÑO, quien tomará la acción a seguir y referirá el caso para la determinación correspondiente.........................................

**CUARTO:** EL CONTRATISTA en ningún caso permitirá que se comiencen trabajos nuevos o diferentes a los indicados en especificaciones, sin antes haberse aprobado una Orden de Cambio mediante el procedimiento establecido en la industria............................

YNL.
JV

**QUINTO:** Ambas partes entienden que este Contrato no constituye una relación de empleado-patrono....................................................................................................................

**SEXTO: Vigencia**

La vigencia de este Contrato y de la construcción de la obra será a partir del 16 de Abril de 2026, hasta el 16 de Octubre de 2026. Esta vigencia está condicionada a los días perdidos por actos de Dios o fuerza mayor, los cuales serán acordados con EL DUEÑO o su representante...................................................

Del CONTRATISTA no finalizar la obra en el término antes indicado no se le impondrá daños líquidos alguno a ser descontados del Contrato.............................................

Del CONTRATISTA finalizar la obra antes del término antes indicado no se le compensará con ninguna bonificación adicional al Contrato....................................

Con la firma y la evidencia de la transferencia del Banco, Este Documento Representa un Recibo de Pago AHL.

**OCTAVO: Términos de Pago**

El pago establecido para este proyecto será el siguiente: El total de **doscientos cincuenta y tres mil quinientos dólares ($253,500.00).** Al momento de la firma de este contrato, EL DUEÑO emitirá un pago de **cincuenta mil setecientos dólares ($50,700).** Este pago es para la compra de los materiales para el comienzo de la obra y seguros. Los pagos subsiguientes se realizará mediante facturas suministradas por trabajos realizados.

**NOVENO:** AMBAS PARTES manifiestan que han leído y entendido todo el contenido del presente Contrato y así lo aceptan por encontrar que el mismo está redactado a nuestra entera satisfacción y que establece fielmente lo que hemos pactado.......................

CamScanner

**DECIMO:** El CONTRATISTA tiene que evidenciar copia del cumplimiento del Seguro de Responsabilidad Pública y del Fondo del Seguro del Estado, en un término no mayor de cinco (5) días calendario, luego de la firma del Contrato. Del CONTRATISTA no cumplir con lo antes mencionado, el DUEÑO se verá en la obligación de penalizar la obra en construcción, hasta que se le presente al DUEÑO los documentos antes mencionados. De surgir la paralización de la obra, todos los daños económicos que esto pudiese ocasionar serán responsabilidad del CONTRATISTA................................

**UNDECIMO:** El CONTRATISTA mantendrá, todos los días, limpio y sin escombros los límites del proyecto...........................................................................................

- Cualquier daño que la construcción le realice a los colindantes al proyecto, serán corregidas y reparadas por el CONTRATISTA, inmediatamente a su costo..........................................................................................
- De surgir de la construcción trabajo deficiente, los mismos tendrán que ser corregidos por el CONTRATISTA a su costo......................................
- El DUEÑO tendrá la prerrogativa de no pagar trabajos deficientes, hasta que los mismos sean corregidos a satisfacción del DUEÑO............................
- El CONTRATISTA será responsable de implementar la seguridad en el transcurso de la construcción, en las cuales cumplan con OSHA y/o cualquier otra agencia concerniente a seguridad en Puerto Rico..............................
- Los pagos parciales de la construcción se realizarán con una factura, en la cual se desglose todas las partidas de construcción, en la que se demuestre cantidades económicas y por unidad, el cual se adjunta a este Contrato.........

JMC
JV

**DUODECIMO: Otras cláusulas y condiciones**

El CONTRATISTA se obliga a corregir todos los defectos con relación a los trabajos siempre y cuando dichos defectos surjan en las obras realizadas por este y que aparezcan en la unidad de vivienda objeto de este contrato dentro de los términos indicados en los reglamentos del Departamento de Asuntos del Consumidor (DACO)........................

El CONTRATISTA representa que mantiene una póliza vigente del Fondo del Seguro Del Estado para cubrir sus empleados.............................................................

El CONTRATISTA se compromete, además, a mantener vigente una póliza de responsabilidad pública general (cubierta de un millón de dólares) para cubrir cualquier daño que pueda sufrir o alegar haber sufrido un tercero por actuaciones del CONTRATISTA, sus empleados, subcontratistas y los empleados de estos. El CONTRATISTA indemnizará a los dueños por cualquier daño que le ocasione a estos el incumplimiento del CONTRATISTA o de cualquier subcontratista de este con las obligaciones mencionadas en este párrafo y también indemnizará por cualquier reclamación que le presente cualquier persona al DUEÑO por daños ocasionados por el CONTRATISTA, sus empleados, subcontratistas y los empleados de estos.................

CamScanner

El CONTRATISTA será responsable por velar por la seguridad de cualquier equipo o material de su propiedad que utilice con relación a la obra y asumirá la falta, pérdida o daño de algún equipo o material de su propiedad durante la construcción de la obra........

Será responsabilidad del CONTRATISTA los atrasos de subcontratistas por falta de trabajo completado........................................................................................

No será responsabilidad del CONTRATISTA los atrasos por falta de material, equipo y/o toma de decisiones que sean responsabilidad del DUEÑO......................................

En el caso que haya un cambio en el sistema contributivo o en impuestos de ventas, se añadirán los costos adicionales que esto produzca tanto en materiales como en servicios contratados y otros........................................................................................

EL CONTRATISTA entregará por escrito en cada certificación entregada al DUEÑO los días en que el CONTRATISTA no pudo trabajar en la obra debido a razones atribuibles exclusivamente al DUEÑO para que así cuenten como días adicionales al término máximo para realizar la obra acordado por las partes en este contrato.........................

Disposiciones adicionales;

I- Este contrato constituye todos los acuerdos llegados entre las partes y modifica toda negociación previa de conformidad.

Para que asi conste suscribimos el mismo de conformidad.

En Rio Grande, Puerto Rico, a 16 de Abril de 20 26

Sr. Amilcar Norat Collazo
EL CONTRATISTA

Sr. Juan A Vasquez
EL DUEÑO

CS CamScanner

COAMO BUILDERS, Corp.

# COTIZACIÓN

**Coamo Builders, Corp.**

35 CALLE JOSÉ BORBÓN STE-65
APARTADO 136, GUAYNABO, P.R. 00969
Teléfono: **787-402-1940**
Email: **coamobuilders@yahoo.com**

FECHA: **10** DE ABRIL **2026**

PARA: Lcdo Edgardo Santiago
43 Hacienda San José
Urb Sureña Caguas PR, 00727

## TRABAJOS A REALIZAR

- **Cotización:**
  Construcción de cuarto y baño en el área posterior de 30" de largo x 14' pies de ancho que incluye lo siguiente:
  a) Construcción de zapatas, pisos, paredes, columnas vigas y techo en hormigón y bloques.
  b) Construcción de facilidades eléctricas, plomería pluvial y agua potable.
  c) Empañetado de todo lo nuevo y áreas afectadas.
  d) Relocalización de transfer switch.
  e) Construcción de topping e instalación de lozas en piso y paredes de baño. Las zapatas serán suministradas por el dueño.
  f) Instalación de mezcladoras y equipos de baño.
  g) Aplicación de primer y pintura.

**II.** Construcción de piso en el área de la marquesina de 22' x 30" x 2" de espejor. Dicho piso será pulido. Incluye remoción de cristales para taparlos con bloques y empañetados.
**III.** Construcción de escalera en metal en el área posterior la cual dará acceso al balcón del segundo nivel. Se hará un acceso para llegar a dicha área.
**IV.** Instalación de pérgola suspendida de 27' x 10' en el balcón del segundo nivel. Dicha pérgola será construida según el acuerdo de los dueños.
**V.** Construcción de terraza en hormigón de 24' x 12' el cual el techo estará a 10' de alto y la construcción de la misma será diseñada para relocalizar las puertas existentes e instalar cristales fijos ( estas serán suministradas por el dueño) de acuerdo al diseño de la residencia.
**VI.** Remoción de staccko en el techo de todo el segundo nivel y el masillado de la misma.
**VII.** Instalación de lozas en el primer y segundo nivel de la residencia existente, las cuales serán suministradas por el dueño. Dicha instalación será piso sobre piso con pega especial la cual será suministrada por el dueño.
**VIII** .Remodelación completa del baño master la cual incluye; Remoción de equipos, lozas, cristales mezcladores y la instalación de lozas, equipos, accesorios, mezcladoras y partes de los componentes del baño.
**IX.** Aplicación de primer y pintura a todas las estructuras nuevas, techos del segundo nivel y áreas afectadas.
**X.** Recogido y Disposición de escombros de todo el projecto.
**XI** Incluye el costo del fondo del seguro del estado y de responsabilidad pública
**XII.** Dicho proyecto si se va a realizar completo tendrá una duración de 4 meses contando con la cooperación del dueño para tener los materiales suministrados a tiempo y la relocalización de muebles y equipos en ambos pisos.

**Costo Total $182,600.00**

Esperamos que la información aquí suministrada le sea de su conformidad.

Cotización preparada por: ______________________

Amilcar Norat Collazo
Principal

# COTIZACIÓN

COAMO BUILDERS, Corp.


**Coamo Builders, Corp.**

FECHA: 29 DE JUNIO DE 2026

35 CALLE JOSÉ BORBÓN STE-65
APARTADO 136, GUAYNABO, P.R. 00969
Teléfono: **787-402-1940**
Email: **coamobuilders@yahoo.com**


PARA: **Signature Real States.**

| **CONSTRUCCIÓN DE 2 EDIFICIOS DE 24'X20' DE 2 NIVELES EN HORMIGON Q INCLUYEN LO SIGUIENTE:** |
| --- |
| • Construccion de Zapatas, Pisos, Columnas , Vigas y Techos en Hormigon.<br>• Construccion de Paredes de bloques en los interiores .<br>• Construccion de facilidades eléctricas .<br>• Construccion de facilidades de Agua potable fría y caliente.<br>• Construccion de facilidades de plomeria sanitaria y Recogido de aguas pluviales.<br>• Empañetados de todo lo construido.<br>• Construccion de toping de pisos y pulido de los mismos.<br>• Instalaciones de lozas en los baños (áreas de duchas).<br>• Instalacion de Mexcladoras, Equipos de baños, Utilidades de baños.<br>• Aplicacion de Primer y Pintura.<br>• Construccion de Pozo Muro.<br>• Instalacion de Puertas y Ventanas.<br>• Instalacion de Gavinetes de Cocina.<br>• Construccion de Estructura en Hormigon de 16'x 20' de 2 niveles en el primer nivel será marquecina y en el segundo será la cocina.<br>• Póliza del Fondo del Seguro de Estado y Responsabilidad Pública. |
| **Costo Total: $356,875.00** |

Esperamos que la información aquí suministrada le sea de su conformidad.

Cotización preparada por: ______________________

Amilcar Norat Collazo
Principal

**26-03166-ESL13** AMILCAR NORAT COLLAZO
**Case type:** bk **Chapter:** 13 **Asset:** Yes **Vol:** v **Bankruptcy Judge:** ENRIQUE S. LAMOUTTE INCLAN
**Date filed:** 07/09/2026 **Date of last filing:** 08/11/2026

# Creditors

| | |
|---|---|
| **DEPT. DE TRANSPORTACION Y OBRAS PUBLICAS**<br>P O BOX 7266<br>PONCE, PR 00732 | (5442050)<br>(cr) |
| **DEPT. DE TRANSPORTACION Y OBRAS PUBLICAS**<br>P O BOX 7266<br>PONCE, PR 00732 | (5442051)<br>(cr) |
| **FRANCISCO M. NORAT GONZALEZ**<br>URB VERSALLES<br>B5 CALLE 1<br>Bayamon, PR 00959 | (5442052)<br>(cr) |
| **JEFFERSON CAPITAL**<br>PO Box 7999<br>Saint Cloud, MN 56302-7999 | (5442053)<br>(cr) |
| **Lcda Carla Araiza Gonz?lez**<br>PO Box 9023525<br>San Juan, PR 00902 | (5442054)<br>(cr) |
| **LUMA**<br>P O BOX 364267<br>SAN JUAN , PR 00936 | (5442055)<br>(cr) |
| **LUMA ENERGY**<br>REVENUE PROTECTION<br>PO BOX 364267<br>SAN JUAN, PR 00936 | (5443490)<br>(cr) |
| **SANDRA GONZALEZ COLLAZO**<br>URB VERSALLES<br>B5 CALLE 1<br>Bayamon, PR 00959 | (5442056)<br>(cr) |


| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 08/14/2026 16:13:24 | | | |
| **PACER Login:** | bigasalex | **Client Code:** | |
| **Description:** | Creditor List | **Search Criteria:** | 26-03166-ESL13 Creditor Type: All |
| **Billable Pages:** | 1 | **Cost:** | 0.10 |